Baumann *v.* Howard J. Ehmke Co. et al., Aps.

Argued December 18, 1936.

Before Keller, P. J., Cunningham, Baldrige, Stadtfeld, Parker and James, JJ.

*George H. Detweiler,* for appellant.

110

*Maurice S. Levy,* for appellee.

OPINION BY PARKER, J., February 26, 1937:

The question presented to us in this workmen's compensation case is whether a traveling salesman was in the course of his employment with the defendant at a time when he suffered accidental injuries which resulted in his death. The referee awarded compensation and this action was affirmed by the board. On appeal to a court of common pleas judgment was entered for the claimant, decedent's widow.

John H. Baumann, Jr., had been employed for a number of years by Howard J. Ehmke Company as a traveling man selling canvas goods, principally picking bags used by producers of apples and citrus fruits, and his territory embraced all of the United States. He was paid by salary and commission, his compensation averaging $1,700 to $1,800 per year, of which $300 was from commissions. Pursuant to the instructions of his employer, he left the office of the company in Philadelphia about August 26, 1934, for the purpose of making an extended trip as he had done several times before and was specially advised to visit one J. H. Hibbs, a farmer at Dillard, Oregon. He covered on this trip territory in West Virginia, Ohio, Illinois, Arkansas, Washington and Oregon, staying at times with farmer prospects. On November 8, 1934, while on the premises of J. H. Hibbs in Oregon and at a place where a tree had been felled and was being cut up, a chip from a wedge flew off and struck Baumann, a part of it entering the knee. An infection developed and Baumann died on January 14, 1935.

Defendant raised no question as to the fact that the accident occurred outside the state of Pennsylvania. The only defense relied upon is based on the contention that the employee was acting outside the course of his employment with defendant when he suffered

his injuries, it being alleged that he was then either taking a vacation or was engaged in the service of another employer.

Our workmen's compensation act does not give a right to compensation for all injuries arising out of the employment as is the case in some other states. "On the contrary, it requires, in express words, the injuries, not occurring on the premises of the employer, to be sustained while the employee is 'actually' engaged in the furtherance of 'the business or affairs of his employer": *Maguire v. James Lees & Sons Co.*, 273 Pa. 85, 88, 116 A. 679. In that case it was also held that "actually" means "as an actual or existing fact" and does not mean "constructively" engaged. "Our prior decisions show that, in each instance where compensation was allowed for accidental injuries, occurring off the premises, the facts warranted the conclusion that the employee sustained his injuries while actually engaged in the performance of some as yet incompleted business of his employer": *Palko v. Taylor-McCoy C. & C. Co.*, 289 Pa. 401, 404, 137 A. 625.

The ultimate determination of the applicability of these definitions, under any given state of facts, therefore, depends upon the interpretation of the act, and is a question of law: *Callihan v. Montgomery*, 272 Pa. 56, 61, 115 A. 889. We have here, however, some conflict in the evidence bearing on the question as to whether the employee had taken himself out of the course of his employment with defendant at the time the accident occurred. It was therefore for the fact finding body, referee or board, to determine the fundamental facts. If the findings of fact made by the board in this respect are based on competent and relevant evidence, they are conclusive and this court has no power to revise those findings: *Vorbnoff v. Mesta Machine Co.*, 286 Pa. 199, 206, 133 A. 256; *Ford v. A. E. Dick Co.*, 288 Pa. 140, 150, 135 A. 903. The referee,

affirmed by the board, found that on November 8, 1934, and for some time prior thereto the claimant's decedent, Baumann, was in the employ of the defendant as a salesman; that on that day he was calling on J. H. Hibbs of Dillard, Oregon, for the purpose of selling him picking bags, such call being made at the specific request and instruction of his employer; that at this time he sustained an accident in that a steel chip from a wedge which was being used by persons on the property of Mr. Hibbs flew from the wedge and imbedded itself in the left knee of the decedent; and that as a result of the accident the knee became infected and caused the death of decedent. If there was competent evidence to support the necessary findings, the claimant was entitled to a judgment. We must therefore examine the evidence in a light most favorable to the claimant, drawing all reasonable inferences in her favor.

In 1933, Baumann had called on Hibbs at his farm for the purpose of making a sale but was not success- ful. By direction of the employer he again called on Hibbs on October 20, 1934, and discovered that Hibbs was still not in the market for bags. Baumann had as a traveling companion a woman with whom he had contracted a bigamous marriage and some of that woman's relatives were related to Hibbs' stepmother. He was not successful in selling to Hibbs but on Hibbs' invitation concluded to make his headquarters there for a short time. During this time and prior to the accident on November 8, 1934, Baumann made at least two side trips for the purpose of selling bags. Baumann traveled by automobile for his employer and frequently stopped with farmers whom he thought probable customers. After exhausting the territory in Oregon Baumann had been directed to go south into the citrus fruit belt in California and take such further orders as he could obtain. When he finished solicit-

ing in Oregon it was not yet an advantageous time for the sale of his articles for the reason that picking time for citrus fruit at the place in California to which he was going had not arrived and he accordingly delayed his trip to the south for a short time. Baumann had boarded with Hibbs about three weeks when the accident occurred.

It is necessary to determine just what the relationship was between Baumann and Hibbs. Hibbs testified that he told Baumann he could remain with him without paying any board and until he was ready to go south and that while Baumann was with him he occasionally helped with some odd jobs. When Hibbs was asked as to whether or not Baumann helped pay for his board by his work, Hibbs said that he did not as he was not able to do work which was of much advantage to Hibbs. On the day that the accident occurred, R. L. Hibbs, a brother of J. H. Hibbs, was going to the woods to fell a tree. Baumann went along and gave some assistance in the felling of the tree. This work had been completed and R. L. Hibbs was engaged in cutting up the tree when Baumann, who was not at the time doing anything but standing around, was struck by the chip from the wedge. R. L. Hibbs was asked whether Baumann was working for J. H. Hibbs at the time and he said that he was not.

The fact finding bodies were justified in concluding that Baumann remained where he was with the approval of his employer; that it would be a few days before he would be in a position to solicit citrus fruit growers; and that it was therefore necessary for him to remain somewhere in the west, either at a hotel, private boarding house, or private home, or make a round trip across the continent. The evidence is clear that Baumann was following the instructions of his

employer in remaining where he was. The fact finding bodies were also justified in concluding that Baumann was not an employee or servant of Hibbs and that such work as he performed was nothing more than any guest on a farm would do in the natural order of events.

With these facts in mind the legal question to be here decided is whether Baumann, by his stay at the farm of J. H. Hibbs, took himself out of the course of his employment with defendant. The Supreme Court and this court have held that an employee who is injured while traveling for his employer after starting on his trip and before he returns to headquarters is entitled to compensation. In *Haddock v. Edgewater Steel Co.*, 263 Pa. 120, 106 A. 196, an engineer employed on a salary was instructed to go from the place of his employment to a location in Ohio for the purpose of examining some natural gas burners. He made the required examination and returned to Pittsburgh by rail, arriving there at 11:30 P. M. While on his way from the depot to his residence in the latter city he was struck by an automobile, the accident resulting in his death. The Supreme Court there approved the following language of the chairman of the compensation board: "He was commissioned to go to another city to transact business of importance for his employer. He surely was in the course of his employment at the conclusion of that day's engagement when he was taken to a train near Youngstown for the purpose of returning to Pittsburgh. No one could deny that he was in the course of his employment when on the train for his destination—Pittsburgh. It was necessary for him to arrive there at night; had he gone directly from the railroad station to Oakmont, the site of the employer's plant, no one would deny that, while on this journey, he was still in the course of his em-

ployment. Who, then, can deny that he was in the course of employment when, having arrived at Pittsburgh late at night, he did the usual, ordinary and reasonable thing in going to his home before he reported to his employer?"

In *Messer v. Mfrs' L. & H. Co.*, 263 Pa. 5, 106 A. 85, an engineman, while on his vacation, was called by telephone and instructed to go to a pumping station of the defendant and inspect that station. While on his way to the station by automobile he met with an accident. It was there said (p. 9) : "His compliance with this request continued from the time he left his home until he finally returned."

In *Krapf v. Arthur*, 95 Pa. Superior Ct. 468, a traveling salesman was sent on a two-day selling trip. He returned to his home on the second night and set out the following morning by trolley to make his report to the office. He was injured in a collision while on his way. This court, speaking through Judge GAWTHROP, said (p. 472) : "When he went out to sell lumber he did not have regular hours of employment ...... But when he started from Tamaqua the next morning on his two-day trip, his status was not that of bookkeeper, an employee with fixed hours of service, but that of a salesman who was in the course of his employment until he returned to the defendant's place of business at Lansford and reported the results of his trip to his employer, unless in the meantime he temporarily departed from his employer's service." Also, see *Blouss v. Delaware, L. & W. R. R. Co.*, 73 Pa. Superior Ct. 95; *Howell v. Kingston Twp. S. D.*, 106 Pa. Superior Ct. 89, 161 A. 559; *Altman v. Kaufmann Realty Co.*, 110 Pa. Superior Ct. 178, 167 A. 394; *Bock v. Reading*, 120 Pa. Superior Ct. 468, 182 A. 732.

From the time Baumann departed from the office

in Philadelphia and until he reported there on completion of his trip he was actually engaged in defendant's business unless he did something to break the employment. He had no regular hours of work and necessarily traveled and stayed at hotels, inns or other boarding places. It did not affect his relationship to his employer that Mr. Hibbs chose to board him without charge. Neither did the fact that he performed some slight service for Hibbs change the relationship to the defendant. We have frequently held in the cases of accidents occurring on the premises that slight and temporary departures from work in ministering to an employee's personal comforts or necessities, as by warming himself, seeking shelter, or leaving work to attend to calls of nature, to procure drink, refreshment, or fresh air, or even to rest in the shade, do not break the course of the employment: *Dzikowska v. Superior Steel Co.,* 259 Pa. 578, 103 A. 351; *Blouss v. Delaware, L. & W. R. R. Co.,* supra; *Hale v. Savage Fire Brick Co.,* 75 Pa. Superior Ct. 454; *Waite v. Pittsburgh Limestone Co.,* 78 Pa. Superior Ct. 7. The slight service in helping R. L. Hibbs, a brother of the person with whom he was staying, to fell a tree did not create any relationship of master and servant or break the course of decedent's employment with defendant. There was nothing inconsistent with the continuance of the relationship of master and servant between Baumann and defendant for he was there by orders of defendant and subject to call at any time. We are of the opinion the case was correctly decided by the court below.

Judgment affirmed.