## Herman *v.* Follmer Trucking Company (et al., Appellant).

448

Argued November 9, 1937.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Ellwood H. Deysher,* for appellant.

*J. Fred Schaffer,* with him *Preston B. Davis, Helen J. Schaffer,* and *Harry S. Craumer,* for appellee.

OPINION BY RHODES, J., December 17, 1937:

John S. Herman, husband of the claimant in this workmen's compensation case, was in the employ of the Follmer Trucking Company as a truck driver on May 31, 1934. On that day Herman was accidentally

injured on the state highway, about six miles east of Reading, Pa., and as a result died on June 2, 1934, at St. Joseph's Hospital in the city of Reading. A claim for compensation was made by his widow. An answer was filed wherein it was alleged that the accidental injury did not occur in the course of deceased's employment. The referee allowed the claim and made an award which he subsequently amended in order to correct the original computation which was based upon an erroneous date of birth of a minor child. The board affirmed the findings and conclusions of the referee, excepting the referee's eighth finding of fact, for which the following was substituted: "8. We find that the decedent, in rendering assistance to the injured, was performing duties in the course of his employment and pursuant to instructions given him and that his death was the result of injuries while in the performance of those duties." The court of common pleas affirmed the board and entered judgment on the award as amended. From the judgment the Manufacturers' Casualty Insurance Company, insurance carrier for defendant employer, has appealed.

As stated in appellant's brief, the assignments of error raise but one question: Is there legally competent evidence to support the findings and conclusion of the board that deceased was fatally injured as the result of an accident in the course of his employment with defendant employer?

On May 31, 1934, deceased was driving a truck of defendant employer, a common carrier, on his regular route between Milton, Pa., and Philadelphia, Pa. At about 5:15 o'clock on that morning he was driving east on the state highway between Reading and Pottstown, near the village of Fairview. Driving in the same direction and following deceased was a car driven by one Owens. Following the Owens car was an Auburn car driven by Walter Schockey.

When near the village of Fairview, the Schockey car passed the car driven by Owens and also the truck driven by deceased. Just after having passed the truck driven by deceased, the Schockey car collided with a Plymouth car being driven in the opposite or westerly direction. The Schockey car after the accident was diagonally across the road and directly in the path of deceased's on-coming truck. Deceased thereupon drove his truck off the concrete highway on his right-hand side and within four or five feet of the Schockey car. He immediately got off the truck, the engine still running, and proceeded to the Schockey car and rendered assistance to those who were riding therein. Three women in the Schockey car were cut by flying glass. Deceased took one of the injured women to the north side of the road, just across from where the Schockey car was standing in the highway, and while there supporting her a Chevrolet coal truck, proceeding in a westerly direction, stopped on the highway about ten feet from where deceased and the woman were standing near a telephone pole. A Buick car likewise proceeding in a westerly direction thereupon crashed into the rear of the Chevrolet coal truck, and pushed it forward so that it pinned the deceased between the bumper of the coal truck and the telephone pole. As a result of the injuries sustained the deceased died on June 2, 1934.

The testimony of T. W. Bennett, assistant manager of the defendant employer, is, in effect, that the drivers, including deceased, were instructed and expected to assist and not to pass accidents without offering assistance; that they were to be courteous on the road; and that they owed a duty to other travelers and patrons on the highways.

It is argued on behalf of appellant that, instead of going on his way, deceased drove his truck off the concrete on his right-hand side, abandoned his employ-

ment, and went to the assistance of the injured women in the Auburn car; that he was not performing duties in the course of his employment in extending assistance to such injured persons. The answer to this argument is that it ignores both the physical facts and deceased's instructions by his employer. The Schockey car was on the concrete highway directly in the path of deceased's on-coming truck; it contained three injured women. Deceased stopped his truck entirely off the concrete highway, four or five feet in the rear or west of the Schockey car. Assuming, as appellant argues, that he should have disregarded and passed by the injured women and the crippled Schockey car on the highway, it would have been most hazardous to have endeavored to drive his truck around the wrecked car and pass it by driving in the westbound traffic lane on this foggy morning. The danger which he would have encountered by proceeding in this manner around the Schockey car was shown by subsequent events.

Appellant's argument seems to imply that as soon as deceased got off his truck he abandoned his employment. With such a contention we do not agree. Deceased operated one of defendant employer's trucks regularly, three times a week, between Milton and Philadelphia over a prescribed route. From the time that he left defendant employer's garage in Milton, on the evening of May 30th, he was in the course of his employment, unless, in the meantime, he temporarily departed from his employer's service. Had deceased taken one of the injured parties six or eight miles to the Reading hospital, there might be some merit in appellant's argument that there was an abandonment of his employment. We do not consider the act of deceased even an incidental or inconsequential departure from his line of duty. He still maintained supervision and control over defendant employer's truck. The engine of the truck was still running when he was in-

jured within a few feet of it. The evidence disclosed nothing to indicate any abandonment of the work for which he was employed. We think that what he did was in the line of duty and clearly within the course of his employment. See *Baumann v. Howard J. Ehmke Co. et al.*, 126 Pa. Superior Ct. 108, 190 A. 343.

Although the referee found that deceased's truck was not involved in the accident, his conduct under the circumstances cannot be said to constitute a break in the course of his employment. The roadway before him was blocked by the wrecked car containing injured persons. In order that he might proceed, if for no other reason, he could reasonably assist in obviating the obstruction before him, which made the continuation of his trip hazardous or impossible. But we are also convinced that the instructions given him by the defendant employer required him to do just what he did, and that the board had evidential support for its finding that, in rendering assistance to the injured, deceased was acting in pursuance of instructions given him by defendant employer. In sustaining the board the court below in its opinion has correctly stated: "This accident cannot be dissociated from his employment and his instructions in connection therewith. The accident happened not only while the relation existed, but during the course of the employment."

"To be entitled to compensation for injuries received when off the premises of the employer, the employee must be actually engaged in furthering the business of the employer. *Palko v. Taylor-McCoy Coal & Coke Co. et al.*, 289 Pa. 401, 137 A. 625; *Feeney v. N. Snellenburg & Co. et al.*, 103 Pa. Superior Ct. 284, 286, 157 A. 379. Whether, on the state of facts found, deceased was killed in the course of employment is a question of law. *Callihan v. Montgomery*, 272 Pa. 56, 62, 115 A. 889, 891; *Gurski v. Susquehanna Coal Co.*, 262 Pa. 1, 104 A. 801": *Paulin v. Williams & Company, Inc., et*

*al.,* 122 Pa. Superior Ct. 462, at page 467, 186 A. 415, at page 417.

Under the facts found and supported by evidence, the board and the court below properly concluded that the deceased was fatally injured by an accident which occurred in the course of his employment.

Although not included in the statement of questions involved, appellant refers in its brief to an alleged erroneous allowance of interest on the judgment entered by the court below. The method of computing interest on compensation payments has been explained in *McGee v. Youghiogheny & Ohio Coal Co.,* 121 Pa. Superior Ct. 85, 182 A. 773; *Petrulo v. M. O'Herron Co. et al.,* 122 Pa. Superior Ct. 163, 186 A. 397; *Graham v. Hillman Coal & Coke Co.,* 122 Pa. Superior Ct. 579, 186 A. 400. Interest should be computed in accordance with these decisions.

Judgment is affirmed.