## Mitchell *v.* Holland Furnace Company et al., Appellants.

Argued December 17, 1958.  Before RHODES, P. J., GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ. (HIRT, J., absent).

*George D. Sheehan,* with him *John Paul Erwin,* for appellants.

*Bernard Frank,* with him *Scoblionko & Frank,* for appellee.

OPINION BY WATKINS, J., March 18, 1959:

In this workmen's compensation case, the decedent, Peter Mitchell, was employed by the appellant, Holland Furnace Company, as a service salesman, whose business it was to solicit orders.

On July 7, 1955, he was working with one John Kidda, an assistant sales engineer for the employer, in the City of Northampton, Northampton County, Pennsylvania, soliciting orders on alternate sides of Dewey Avenue. When the decedent had finished his side of the street he went to the home of Louis Bartholomew, 2260 Dewey Avenue, where Kidda remarked about the "loaded" cherry tree in the garden, requested of Bartholomew and received permission to pick some cherries. Decedent did the same, climbed the tree by means of a ladder and while standing on a limb of the tree, fell to the ground. He died on the way to the hospital as the result of a fractured skull. Ruth Mitchell, the decedent's widow, and claimant appellee herein, filed a petition for workmen's compensation on behalf of herself and three minor dependents. The referee dismissed the petition and on appeal to the Workmen's Compensation Board, the appeal was sustained and an award granted. The Court of Common Pleas of Northampton County affirmed the decision of the board and entered judgment for the claimant. This appeal by the employer followed.

The questions before us on appeal are, under the Workmen's Compensation Law, (1) Does the evidence support the finding of the board that decedent's death was the result of an accident? And (2) does the evidence support the finding of the board that the decedent was in the course of his employment at the time of the fatal injuries?

In a well considered opinion by Judge WOODRING, the court below decided these questions in the affirmative and in affirming the judgment of the court below we adopt portions of that opinion which read as follows:

"In the case at bar decedent was at the home of a customer or prospective customer. Defendant's as-

sistant sales manager, with whom decedent worked, while effecting his sales talk, admired the customer's cherry tree and asked leave to pick some of the fruit. Decedent likewise expressed interest and commenced climbing the tree. In a matter of seconds he fell and suffered fatal injuries. In our opinion it is obvious that the injuries resulted from an accident as that word is used in the act . . . .

"The fact-finding body has determined that decedent's fall was accidental. The evidence in the case and the natural inferences which may be drawn therefrom support that finding. Under these circumstances the Court has no authority to interfere with the fact-finding functions of the Board. Gaich v. Paul Kerlin Const. Co., 170 Super. 535, 85 At. 2d 642 . . . .

"Was decedent in the course of his employment at the time of his fatal injury? In the instant case the accident occurred off employer's premises. Claimant, therefore, has the burden to prove that the employee was *actually engaged in the furtherance of the business or affairs of the employer,* and that his presence was required at the place of the accident by the nature of his employment. Keim v. Burkholder, supra; Wolsko v. American Bridge Co., 158 Super. 339, 44 At. 2d 873. There must be proof of both an injury and an accident. McCleary v. Pennsylvania Electric Co., supra; Simon v. Fine, 167 Super. 386, 74 At. 2d 674. But the injury need not have arisen out of the employment. The burden of proof imposed upon the plaintiff is to establish only that the accident occurred in the course of employment. Hopwood v. City of Pittsburgh, 152 Super. 398, 33 At. 2d 658.

"Decedent's work as a canvasser or traveling salesman was principally off-premises-employment. As such the term 'course of employment' must be given a more liberal construction than where the employment

is to be performed on the premises. Combs v. Cole Bros. Circus, 165 Super. 346, 67 At. 2d 791.

" 'Course of Employment' has been defined in many cases. One of the definitions often cited is found in Lewis v. Capital Bakers, 144 Super. 171, 18 At. 2d 883:

" '. . . an injury in the course of employment embraces all injuries received while engaged in furthering the business of the employer and injuries received on the premises, subject to these limitations: (1) the employee's presence must ordinarily be required at the place of injury; or, (2) if not so required, the departure of the servant from the usual place of employment must not amount to an abandonment of employment, or be an act wholly foreign to his usual work, it must merely be an innocent or inconsequential departure from the line or place of duty.'

" 'Course of Employment' embraces intervals for leisure within regular hours of working day. Hess v. Catholic Knights of St. George, 149 Super. 575, 27 At. 2d 542. A slight and temporary departure from work and administering to employee's personal comforts or conveniences does not break the course of employment. Baumann v. Ehmke Co., 126 Super. 108, 190 At. 343. In order that employee's departure from duties should not bar right to compensation, departure must not amount to abandonment but must be innocent or inconsequential. Hunter v. American Steel & Wire Co., 293 Penna. 103. Neither the statute nor the cases construing it require that the employee must have been actually engaged in his work when injured. Hale v. Savage Fire Brick Co., 75 Super. 454; Tappato v. Teplick & Eisenberg Co., 133 Super. 231, 2 At. 2d 545. The injury may be within the scope of employment, and therefore, compensable if there has been no abandonment of such employment. Hall v. Carnegie Institute of Technology, supra.

"In the instant case decedent reported to the Bethlehem office each morning and was required to report back to that office at the close of each day. On July 7, 1955, the date of the fatal injury, and for some time previously, decedent had been working with John Kidda, an assistant sales manager for defendant-company. On the day in question Kidda drove decedent to the borough of Northampton, selected a residence block in which the two were to work, and instructed decedent to make house calls on one side of the street while Kidda made calls on the other side. By prearrangement the two men would meet in one of the homes at the end of the block. While Kidda was 'selling' Louis Bartholomew, which transaction occurred on the rear porch of the Bartholomew home, decedent re-joined Kidda. Shortly thereafter the cherry picking conversation and incident occurred which resulted in decedent's death. The Board has found as a fact that the fatal accident and injury occurred in the course of decedent's employment. We are of the opinion that the evidence supports that finding and conclusion. Our only function, therefore, is to affirm the Board's finding and conclusion and dismiss the appeal. Gaich v. Paul Kerlin Const. Co., supra.

"The Board's finding that the accident occurred in the course of employment is abundantly supported by the evidence on one of two theories: (1) decedent's act of cherry picking on the premises of defendant's customer and in the presence of defendant's assistant sales manager was an integral part of decedent's sales duties and functions. It is the salesman's duty to gain the attention and favor of a prospective customer. Chase v. Emery Mfg. Co., 271 Penna. 265. The Board has found that decedent's act was incidental to his primary task of selling. We cannot lightly dismiss the logic of such conclusion; (2) even if decedent's act of

cherry picking is not construed to be part of his employment, it nevertheless constitutes such a slight departure as not to break the course of employment. Hunter v. American Steel & Wire Co., supra."

Judgment affirmed.