## Goodman *v.* University Shop, Inc. (et al., Appellant).

Argued March 21, 1961. Before RHODES, P. J., ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ.

*Harry R. Matten,* with him *Matten and Cottom,* for appellant.

*Edward Youngerman,* with him *Harold Blumberg,* and *Yaffe and Blumberg,* for appellee.

OPINION BY WOODSIDE, J., April 13, 1961:

The question in this workmen's compensation case is whether Daniel Goodman was in the course of his employment when he was killed in an automobile accident at the Valley Forge toll gate of the Pennsylvania Turnpike on October 10, 1957.

The referee and board concluded that he was in the course of his employment when killed, and that the widow and the deceased's three minor children should be awarded compensation. Upon appeal by the insurance carrier of the defendant, the Court of Common Pleas of Berks County affirmed the board and entered judgment for the claimants. The insurance carrier appealed to this Court.

It is the prerogative of the board, and not the court, to weigh the testimony of witnesses and to accept or reject it in whole or in part, and the findings of the board are final if supported by competent evidence. *Chuplis v. Steve Shalamanda Coal Co.,* 192 Pa. Superior Ct. 76, 80, 159 A. 2d 520 (1960) ; *Tanner v. U. S. Steel Corp.,* 176 Pa. Superior Ct. 420, 423, 107 A. 2d 692 (1954).

We can, therefore, most accurately set forth the facts in the language of the board[1] as it found them.

"The decedent, Daniel Goodman, was the owner of 140 shares of Common Stock outstanding out of a total issue of 200 shares and was the President of the [defendant] corporation. His wife, the present claimant, was employed also by the corporation to do the routine bookkeeping for which she was to receive a salary, although she never actually collected the salary. The business in which the decedent was involved was The University Shop, Inc., the present defendant. It was a men's furnishing store located in Reading, Pennsylvania. The store employed two additional employes, Louis Lewis and Charles R. Sheidy, Jr.

"The decedent, on October 9, 1957, at or about 3:00 p.m. left The University Shop, Inc., in a 1957 Mercury Station Wagon. The station wagon at the time contained a clean shirt in a container, a large number of sheets of music and a sport jacket. The record reveals that the decedent, for a considerable period of time, had been interested in music, wrote lyrics, and was actually receiving a royalty for the sale of his music. The decedent arrived at the Lattimer Cafe, Inc., 247 South 17th Street, Philadelphia, Pennsylvania at or about 7:00 p.m. on the same date. The testimony fails to disclose why the decedent took

---

[1] The referee's findings are couched in unfortunate language. They set forth that the named witness "testified" to thus and so. Narrating or restating the testimony is not making a finding of fact. It may be true that witness A *testified* B sold him a coat, but not true that B sold him a coat. If the fact finder believes B sold A a coat, he should find just that, and not that A *testified* B sold him a coat, which would be true whether the fact finder believed or disbelieved A. Of course, it is frequently necessary to narrate or restate testimony to demonstrate the sufficiency of the evidence to determine certain issues, but ordinarily a narration or restatement of the testimony is not, strictly speaking, a finding of fact.

four hours to drive from Reading, Pennsylvania to Philadelphia, Pennsylvania. The decedent did remain at the Lattimer Cafe until about 3:00 a.m. on the morning of October 10, 1957.

"While the decedent was at the Lattimer Cafe, one Mr. Delmonico, an employee, paid him a bill which was due and owing for merchandise. Mr. Rodstein, President of Lattimer Cafe, Inc., met the decedent at the cafe and purchased from him the sport jacket which was brought by the decedent from the University Shop. The retail price of the jacket was $70.00, however, it was sold to customer Rodstein for $55.00. The testimony reveals that the decedent did not previously inform Delmonico nor Rodstein that he was making this particular trip to bring the sport jacket or make collection of the bill.

"The decedent and Rodstein left the cafe at or about 3:00 a.m. on the morning of October 10 and went to a coffee shop between 47th and 48th Streets on Spruce Street in Philadelphia, Pennsylvania, in the decedent's station wagon and remained there about twenty or thirty minutes when the decedent drove Rodstein to his home at 4615 Pine Street, Philadelphia, Pennsylvania.

"While the decedent was at the Lattimer Cafe, he had several drinks and also made several telephone calls to other prospective Philadelphia customers.

"Between 4:00 a.m. and 4:15 a.m. on the morning of October 10, 1957, the decedent's station wagon, with the decedent operating it, went through the wrong lane at the Valley Forge Interchange and struck an abutment. At the time, decedent was traveling about fifty to fifty-five miles per hour and was killed instantly."

The evidence, viewed in the light most favorable to the claimant, is sufficient to sustain these findings, and we must accept them as true. It remains, how-

ever, a question of law for the courts to decide whether, under these facts, the deceased was in the course of his employment at the time he was killed. *Rybitski v. Lebowitz,* 175 Pa. Superior. Ct. 265, 267, 104 A. 2d 161 (1954); *Hadfield v. American Society of Composers, Authors & Publishers,* 174 Pa. Superior Ct. 394, 397, 101 A. 2d 423 (1953); *Coleman v. Fischer,* 164 Pa. Superior Ct. 261, 265, 63 A. 2d 687 (1949); *Flucker v. Carnegie Steel Co.,* 263 Pa. 113, 118, 119, 106 A. 192 (1919).

The death of an employe as the result of an accident occurring off the premises of the employer is not compensable unless at the time of the accident the employe was actually engaged in the furtherance of the business or affairs of his employer. *Smith v. Frederick Investment Company,* 152 Pa. Superior Ct. 534, 33 A. 2d 510 (1943).

There is no general formula which will enable. us to determine readily whether an accident off the premises occurred in the course of employment. Each case must be disposed of on its own peculiar facts, and the question is frequently, as it is here, a close. one. *Healey v. Hudson Coal Co.,* 130 Pa. Superior Ct. 462, 464, 465, 198 A. 684 (1938); *Coleman v. Fischer,* supra, 164 Pa. Superior Ct. 261, 266,. 63 A. 2d 687 (1949).

The basic facts, which we must accept as a result of the board's findings, are: that the deceased left the employer's place of business to drive to Philadelphia where he delivered a jacket to a customer of the employer, that while there he collected a bill due his employer, and solicited orders for his employer, receiving and writing up at least one order, and that he was killed while returning to Reading.

The defendant contends that the time the deceased spent in Philadelphia, the places he visited, and the fact that he was interested in music and that a number of sheets of music were found in his automobile

indicate that the business he conducted in Philadelphia for his employer was not the purpose of the trip, but merely incidental to it. Although he did take a long time to perform the duties which he performed as an employe, and apparently mixed drinks with his salesmanship, the reasonable inference from the found facts is that he went to Philadelphia on his employer's business, transacted it, and upon returning home the same night was killed. This, we believe, warrants a conclusion that he was engaged in the furtherance of his employer's business when he was killed. *White v. Morris*, 182 Pa. Superior Ct. 454, 127 A. 2d 748 (1956); *Lauer v. Citizens Lumber and Supply Co.*, 170 Pa. Superior Ct. 352, 85 A. 2d 609 (1952); *Chase v. Emery Manufacturing Co.*, 271 Pa. 265, 113 A. 840 (1921); *Mitchell v. Holland Furnace Co.*, 189 Pa. Superior Ct. 82, 149 A. 2d 662 (1959).

Judgment affirmed.

---

DISSENTING OPINION BY MONTGOMERY, J.:

If this award is permitted to stand, then any person who is self-employed may incorporate his business, place a piece of its merchandise in his car, go anywhere, do anything, and still be assured of protection under the Workmen's Compensation laws of this State.

In *Anetakis v. Salvation Army*, 191 Pa. Superior Ct. 268, 156 A. 2d 590, this Court sustained a finding of the Board that the claimant was "off limits" when he went to a snack bar ⅛ of a mile out of camp for lunch after putting his charges to bed, although he had permission to go there.

Here the evidence is overwhelming that the defendant was not only "off limits" but well beyond "limits" in many ways. His business was in Reading; he was in a Philadelphia bar from 7:00 p.m. to 3:00 a.m. with one coat to sell and for many hours after he sold it; from there he went to an all-night restaurant with a

friend (Rodstein), whom he later drove home. The most that can be said in claimant's favor is that from his friend's home the decedent headed in the direction of Reading; but he neglected to observe the Valley Forge Interchange on the Pennsylvania Turnpike and went through it at 55 miles an hour in the wrong lane, killing himself.

On such evidence this Court is sustaining a finding of the Board that at the time decedent was killed he was in the course of his employment. Under earlier decisions this means that, since the accident occurred off his employer's premises, it must be established that decedent *was at the time of the accident actually engaged in the furtherance of the business of his employer. Smith v. Frederick Investment Company,* 152 Pa. Superior Ct. 534, 33 A. 2d 510.

The facts in this case are to the contrary. I would reverse and dismiss the claim.

WRIGHT, J., joins in this dissent.