Dzurko *v.* Pilot Life Insurance Company,
Appellant.

Argued April 11, 1961. Before ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ. (RHODES, P. J., absent).

*Stephen D. Marriner,* with him *McCreight, Marriner & McCreight,* for appellant.

*Paul N. Barna,* with him *Barna & Barna,* for appellee.

OPINION BY WATKINS, J., June 15, 1961:

This is an appeal from the judgment of the Court of Common Pleas of Washington County, in an action of assumpsit on a public school accident insurance policy, in favor of Joseph Dzurko and Mary Dzurko, the insured appellees, and against Pilot Life Insurance Company, the appellant; and from the refusal of the court below to grant judgment non obstante veredicto.

The action was brought by the parents of Joseph Dzurko, Jr., a minor, and a student at Charleroi Borough School District, for injuries sustained as a result of an accident on a public street in Charleroi, between an automobile and a bicycle on which he was riding.

At the time of the accident he was insured under a scholastic group accident insurance policy, the pertinent coverage provisions of which read as follows:

"(2) traveling directly between home and school for the purpose of attending or returning from regularly scheduled classes, but only if such travel occurs within one hour before the commencement of the day's school session or within one hour after dismissal from school, or while traveling in a school bus between home and school for the purpose of attending or returning from regularly scheduled classes."

The stipulated facts are as follows: "On the day of the accident, the insured student started to walk toward his home, which was located approximately fifteen hundred feet northwest of the school. He then met a friend who asked him to accompany the friend on an errand to a downtown store. The boys were en route on the friend's bicycle toward the store, which is located approximately fifteen hundred feet east of the school, when, at a point approximately seven hundred fifty feet east of the school, the bicycle collided with an automobile and the insured sustained the injuries for which indemnity is claimed. The accident occurred within one hour after dismissal from school." The boy intended to proceed home after helping his friend do his shopping.

The case was first submitted and heard by a board of arbitration, which returned an award in favor of the appellant. On appeal to the Court of Common Pleas it was tried by a jury before Judge WEINER and at the close of the appellant's case, a motion for a compulsory nonsuit and a point for binding instructions were refused. A motion for a directed verdict for the appellees was granted by the trial judge. A motion for judgment n.o.v. was denied by the court en banc, consisting of the trial judge, President Judge CARSON and Judge CUMMINS, and judgment was entered on the verdict in the amount of $1191.25.

This case turns solely on a question of the construction of the terms of the policy. The contention of the

appellant is that the lexicographical interpretation of the word "directly", which is defined as, "in a direct manner; in a straight line; without deviation of course; straight." Webster's New International Dictionary, 2d Ed., must govern the construction of this policy as the word is clear and not ambiguous and so the policy must be given the plain, ordinary meaning of its terms. The appellant further contends that the "one hour" clause was only for the purpose of limiting the policy in time as it is conceivable that a student might loiter while proceeding directly home and take more than an hour to cover a short distance.

The contention of the appellees is that, as the policy was written specifically for the Charleroi School District the court can take judicial notice that at no place can a person be required to walk more than a mile or fifteen to twenty minutes between any home in Charleroi and the school. They contend, therefore, that the "one hour" provision expanded the directly home provision so that he was covered even if he deviated from going "directly" home, if he arrived there within the hour. They argue that "traveling directly" includes any travel within one hour of dismissal or traveling by bus.

The law as to construction of insurance policies is well settled, that the policy will be construed most strongly against the insurer who has prepared it; it will be liberally construed in favor of the insured. If any doubt or ambiguity appears as to the meaning of the policy, such doubt or ambiguity should be resolved in favor of the insured. It is also well settled that if the provisions of the policy are reasonably susceptible to two interpretations, it is to be so construed in favor of the insured. *Blue Anchor Overall Co. v. Pa. L. Mut. Ins.*, 385 Pa. 394, 123 A. 2d 413 (1956). See: 1 Goldin, The Law of Insurance in Pennsylvania, §237.

It is true, as contended by the appellant, that the court below treated the "one hour" clause, when applied to "traveling directly" as being capable of two interpretations or, at least, raising a doubt as to the meaning of "traveling directly"; and so resolved that doubt in favor of its expansion by the "one hour" provision. This clause most certainly is susceptible to two constructions, the one placed on it by the appellant and the one placed on it by the appellees and the court below held that both were reasonable constructions and so resolved the question against the party who drew the contract. *Jenkins Towel S. v. Fidelity-Phila. Tr. Co.*, 400 Pa. 98, 161 A. 2d 334 (1960).

We do not believe it necessary to decide whether or not the "one hour" provision restricts or extends the coverage. We believe that this judgment may be sustained by a sensible construction of the "traveling directly" provision and for that purpose we will assume that the "one hour" provision does not expand the coverage.

True, there is no ambiguity in the language itself of the provision "while traveling directly between home and school" but in the construction of this contract, ordinary, every-day experience with the subjects of the coverage, indicate that both the company and the insured must have known the propensity of children not to follow a straight line of conduct, whether fixed by their parents, teachers or this insurance company; and natural inclination to play, loiter and deviate from a directed course; all, too logically, force one to the conclusion that the language contained in the policy must receive a reasonable and practical construction.

The appellant, itself, indicates the futility of the strict interpretation of "directly" by stating that it means the regular route or usual route between home and school. Such an interpretation immediately relaxes the lexicographical meaning to avoid a ridiculous

conclusion. So if the boy regularly went into the business district to perform errands for his mother before going home, even though such a journey would not be in a direct line to his home, it would fulfill even the appellant's definition as to the coverage of this policy. A boy who lived beyond the business district could stop at any number of stores on his way home and still be covered.

It is impossible to make a general rule to cover the interpretation of the clause in question; a strict adherence to the lexicographical meaning would result in ridiculous situations; and a too liberal interpretation would result in such deviation as to destroy the meaning of the provision. One set of circumstances would be such deviation as to deny coverage while another would be such a slight departure that a reasonable and practical interpretation of the provision would require payment under the policy; each case must stand on its own factual merits.

Under the Workmen's Compensation Law where it is required that the act be liberally construed in favor of the claimant, the courts have interpreted the question of deviation by a claimant, from the course of his employment. It has been held that a slight and temporary departure from work and administering to employees' personal comforts or conveniences, does not break the course of employment. *Baumann v. Howard J. Ehmke Co.*, 126 Pa. Superior Ct. 108, 190 A. 343 (1937). The injury may be within the scope of employment and therefore compensable, if there has been no abandonment of that purpose. *Mitchell v. Holland Furnace Co.*, 189 Pa. Superior Ct. 82, 149 A. 2d 662 (1959).

"Contracts of insurance, like other contracts, must receive a practical, reasonable, and fair interpretation consonant with the apparent object and intent of the parties. Contracts of insurance should be viewed in

the light of their general objects and purposes, including the legitimate conditions prescribed by the insurer. Strained or forced constructions of insurance contracts are to be avoided. A policy should not be interpreted either so narrowly or technically as to frustrate its obvious design or so loosely or artificially as to relieve the obligor from a liability fairly within the scope or spirit of its terms. Upon similar principle, if one interpretation, looking at the other provisions of the contract and to its general object and scope, would lead to an absurd conclusion, such interpretation must be abandoned and one which will be more consistent with reason and probability must be adopted." 29 Am. Jur., Insurance, §251; 147 A.L.R. p. 1008. The insurance policy should be reasonably construed considering the intent of the parties. *Hubbard v. Globe Ind. Co.*, 87 Pa. Superior Ct. 483 (1926). Any doubt as to the construction of different parts of a policy must be resolved in favor of the insured. *Standard Accident Insurance Co. v. Malibu Dude Ranch, Inc.*, 193 Pa. Superior Ct. 251, 164 A. 2d 22 (1960); and should be construed most strongly against the company. *Koser v. American Cas. Co.*, 162 Pa. Superior Ct. 63, 56 A. 2d 301 (1948).

The appellant cites, in support of its position, the decision of *Metzler v. London Guarantee & Accident Co.*, 20 N. J. Super. 497, 90 A. 2d 81 (1952), in which case the policy had the "direct from school to home" clause but no provision with regard to time. In that case the court found that the boy had abandoned any plan of going home as he went in the opposite direction from his home, crossed the street and sidewalk, crossed private property and arrived at a point twenty-five feet away, on private property, away from the sidewalk, and then became engaged in playing in a house that was under construction when he was injured.

This illustrates why each case must stand on its own facts as under the history of this case the boy had

stopped his progress of going home and it can certainly be treated as one of abandonment of that purpose. In the *Metzler* case there was no evidence as to how long the boy was playing before he was injured, and there was nothing in the case to indicate at what point the boy's travels ceased to be covered by the policy.

We believe that the instant case is clearly distinguishable from the New Jersey case. Here, our student never left the public street and did not intend to leave it as he was going with his friend to watch the bicycle while his friend picked up the jacket from the store. This required his traveling in a northeastwardly direction, about 750 feet before he was injured, instead of going in a northern direction toward his home. He was struck shortly after he left school and the store to which he was going was another 750 feet northeastwardly from the point of the accident. The deviation here was slight, and in point of time, temporary, and his intention to return home, within the meaning of the policy, was not abandoned. A reasonable, practical and sensible interpretation of "directly home from school" will permit such a deviation.

This group coverage was intended to protect parents from injury to their children while going to or from school. A reasonable, practical and fair interpretation of the intention of the parties must leave some elasticity in the meaning of the word "directly" to school and home, so that in the light of the object of the coverage and the human nature of the children covered, reasonable deviation is permitted so long as there is no abandonment of the intended purpose of the provision. "While the subject-matter may affect the meaning of the parties' words, especially when, in connection with that subject-matter, a conventional interpretation would give an unreasonable result, the court will endeavor to find the interpretation which will effectuate the reasonable result intended or advance the

presumed true purpose." 8 P.L.E., Chapter 6, Section 130, page 154.

Judgment affirmed.