## Schrader v. United States Fidelity and Guaranty Co.

*Robert J. Landy*, for plaintiff.

*Bennett & Davis*, for defendant.

CULLEN, P. J., February 13, 1963.—Donald Schrader, a volunteer fireman, brought this action in assumpsit against United States Fidelity and Guaranty Company and Maryland Casualty Company on contracts of insurance written by defendants, providing against loss arising from accidental injury. Defendant an-

swered denying that plaintiff was covered by the terms of the policy at the time of the injury and alleged in new matter that plaintiff, when injured, was not acting in his capacity as a volunteer member of the fire company, was not at a fire drill, was not at a parade, or was not at a test or trial of any fighting apparatus, and, therefore, was not engaged in any activity covered by the terms of the policy and not entitled to any payments thereunder.

The parties filed a written waiver of a jury trial and requested that the matter be heard by the court. Hearing was fixed and held, testimony taken and no request for findings of fact or law were made by counsel for the parties, but findings were made by the court, exceptions were filed by defendants and argument had thereon. Subsequently, defendant Maryland Casualty Company paid plaintiff the amount claimed in his complaint against said defendant and the action was marked settled and discontinued as to defendant, Maryland Casualty Company. The exceptions on behalf of the United States Fidelity and Guaranty Company are overruled.

At first blush, under the circumstances of the injury, it might well appear that the injury is not compensable, but the court is convinced that applicable legal principles require in all justice that liability be imposed on defendants. These principles include the rule of construction in insurance agreements and the interpretation of ambiguous language in the contract.

On July 22, 1960, plaintiff was a member in good standing of the Athens Borough Firemen's Relief Association, and, as assistant chief of the Fire Department, was in charge of a group of uniformed volunteer members of the said association and traveled with them to Tyrone, New York, to participate in a firemen's parade. On that date, there was existing an in-

surance agreement issued by defendant providing volunteer firemen with coverage against loss or accidental injuries.

The pertinent provisions of the policy are:

"Against loss resulting directly and independently of all other causes from accidental bodily injuries sustained during the term of this policy, covering:

"(a) volunteer members in good standing while on duty as firemen, or while going to and returning acting as members of the fire company and actually from fires, at fire drills, parades, or at tests or trials of any fire fighting apparatus; and

"(b) any paid drivers or employees regularly employed at full time as firemen, while actually on duty at fires, while answering alarms of fires, or while directly returning from fires: subject to the provisions, limitations and exclusions hereinafter contained."

The uncontradicted testimony discloses that plaintiff and his group had participated in a parade which was part of a three day annual fund raising affair. At the conclusion of the parade and before prizes could be announced, it began to rain and plaintiff and his group eventually made their way back to one of the hotels where an orchestra was provided for dancing, apparently as a part of the annual affair, but not under the auspices of any fire department group. Plaintiff took part in the dancing and his partner suggested that in view of the crowded condition, they dance on a table. Plaintiff lifted his partner to the table and as he attempted to step onto the table, the table tipped and fell on him, fracturing his leg. As said earlier in this opinion, at first blush, these facts would seem to disclose actions by plaintiff at variance with the normal duties of a fireman, and as a matter of hindsight, defendant takes the position that such action was clearly not within the terms of the policy. Perhaps if plaintiff

had fallen on the dance floor and fractured his leg, defendant would likewise deny liability. But certainly, dancing, either in private establishments, or at street block dances are normal activities at a fireman's fund raising affair. Does the fact that the dancing activity of plaintiff was unusual take him beyond the scope of policy coverage? If it does, where are the exclusionary provisions of the policy? Obviously, the court does not base its conclusion on the premise that defendant would admit liability if the accident happened during a normal dancing activity because it assumes that defendant denies liability for injury arising from the hypothetical normal dancing.

Defendant writes a special policy for volunteer fire companies. A casualty company, in preparing such a policy and establishing the premium adequate to cover the risk involved, must be held to no less a knowledge of the activities of volunteer fire groups than the knowledge common in rural communities where the necessary fire protection is carried on by volunteer groups supported almost entirely by various entertainment activities such as parades, carnivals and conventions.

From a grammatical standpoint, the court has difficulty understanding just exactly what paragraph (a) meant to the company when the paragraph was written. This paragraph provides for protection against loss covering volunteer members in good standing while acting as members of the fire company and actually on duty as firemen. This paragraph continues in the alternative to say "or while going to and returning from fires, at fire drills, parades, etc." Grammatically, the second alternative would be properly read, in connection with the beginning words of the paragraph "volunteer members in good standing while going to and returning from fires, etc." because the provision in the first clause of the paragraph "while acting as

members of the fire company and actually on duty as firemen" is not properly included in the concluding clause of that paragraph. Did the company mean to say that coverage was had for volunteer members in good standing whether or not they were acting as members of the fire company and actually on duty as firemen? If they intended to say that, the language does not express that intention. Did the company intend that the paragraph would be read as if the word "or" was to be read as if it were the word "including"? If so, the language used does not express that intention, either.

This plaintiff, according to his orders and the general practice prevailing in this area, was a volunteer member, was acting as a member of the fire company and was actually on duty as a fireman. Is not the first clause of paragraph (a) sufficient to include the activities giving rise to this case? Or, did the company mean to say, while acting as members of the fire company and actually on duty fighting fire? The words used fail to express such a meaning, but the company did use such language in paragraph (b) and, therefore, by omitting such language in paragraph (a) did intend to express a more general coverage in paragraph (a).

Going to the phrase "at parades", does the use of the word *at* negate any coverage if the firemen are *in* a parade? It would seem obvious that the company intended to provide coverage at least while the firemen were participating as a unit *in* a parade. Why then does the policy use the word *at?* Is it because it is generally understood that when you talk about a volunteer firemen's parade, you know that there are many connected activities on such an occasion other than the actual marching of the units in the parade?

The evidence is undisputed, and the court finds it credible, that the parade activities had not been terminated because there still remained the awarding of

prizes which were postponed because of the rain that fell just as the actual marching was concluded, and all the firemen involved left the grounds where concessions, rides, and other activities were provided as a part of the fundraising, to seek shelter in the hotels pending the ending of the rain. It is also undisputed that the Athens Fire Company participates away from home in as many as 20 such occasions a year for the reason that such participation usually results in the companies which they visit on those occasions coming to Athens when the fund raising activities of the Athens Fire Department are being held. This is a practice which certainly defendant knows well as an expert in the field of such insurance.

In the opinion of the court, this plaintiff was covered under the first clause of paragraph (a) referred to above because he was a volunteer member in good standing, acting as a member of the fire company and actually on duty as a fireman, performing necessary duties of attending this Tyrone fund raising affair for the reason set forth above. Moreover, he was also at a fireman's parade and this language certainly has a common meaning of activities in connection with the actual marching. The testimony is that so far as the fire department is concerned, the members who are assigned to attend such affairs as the one in question are on duty as firemen and can be disciplined for any improper conduct while so representing their department. Defendant would have the court say that when plaintiff left the parade, that he then ceased to be on duty as a fireman, was not at a parade, and would not again be on duty until the rain had terminated, and he and his party had returned to the parade grounds for the purpose of having prizes awarded. Many accidents occur that are foreseeable by no one, including an insurance company which determines the terms of the contract and the amount of compensation it will receive for pro-

viding coverage. It is certain that the insurance company did not foresee an injury arising from circumstances such as those in this case, but it is equally true that many injuries could result not foreseen by the defendants at the time it was calculating its risks and choosing the correct language. See Dzurko v. Pilot Life Insurance Company, 195 Pa. Superior Ct. 267.

The company did provide certain exceptions to its coverage, but none of the exceptions apply to these circumstances.

It is axiomatic where the terms of a policy are susceptible of different interpretations the construction most favorable to the insured should be the one adopted. The reason for this is that the language of the policy is prepared by the insurer, presumably with the purpose in mind of protecting itself against future claims in regard to which it does not desire to accept liability: Snader v. London & Lancashire Indemnity Company of America, 360 Pa. 548, 551. This court is firmly of the opinion that the injury complained of is covered by the terms of this policy and not excluded and that the court cannot write an exception into the policy not written by defendant.

### Order

And now, February 13, 1963, exceptions and the motion for judgment for defendant are overruled and judgment is entered for plaintiff in the sum of $702.96 against defendant, United States Fidelity and Guaranty Company.