## Frey v. Lehigh Engineering Co., Inc.

*Walker & Walker*, for appellant.

*Butz, Hudders, Tallman & Rupp*, for appellee.

*Peter P. Perry*, for claimant.

HENNINGER, J., July 9, 1963.—Paul E. Frey, upon whose death this workmen's compensation case is based, was an employe of and job foreman for National Bond Insulators, Inc. (hereinafter designated as National), at least until March 1, 1961, on a job which National was performing as subcontractor for Lehigh Engineering Co., Inc. (hereinafter designated as Lehigh), itself a subcontractor, in an installation at the Grace Mines of Bethlehem Steel Company at Morgantown, Pa.

National had fallen upon evil days and Lehigh had been compelled to advance to National the amount of

its payroll in order to keep National's men on the job. On or before March 1, 1961, Lehigh had advanced to National all of the money due on National's subcontract, although a large proportion of the work remained to be done by National.

It was then decided that Lehigh was to pay National's men directly, and before work started on March 2, 1961, National's men were called together and told by Frey that thereafter they were to be paid by Lehigh; they received badges as Lehigh's employes and Lehigh deducted withholding and Social Security taxes and issued a W-2 form to them showing the amount paid.

Decedent was injured a few hours after work started on March 2nd and died as a result of said injury. Claimant filed a claim for workmen's compensation naming Lehigh as the employer. Lehigh denied being the employer, whereupon a new claim was filed naming Lehigh and National as employers.

Testimony was taken before David R. Eaby, referee, who found that Frey at the time of his accident was employed by National. National appealed this finding to the Workmen's Compensation Board, which affirmed the referee's findings and award, whereupon National appealed to this court.

The criterion by which this court determines this appeal is set forth in many decisions of the Superior Court. We quote from Goodman v. Universal Shop, Inc., 195 Pa. Superior Ct. 129, 131:

"It is the prerogative of the board, and not the court, to weigh the testimony of witnesses and to accept or reject it in whole or in part, and the findings of the board are final if supported by competent evidence."

The board may have oversimplified the problem when it stated:

"There is not an iota of persuasive testimony that Lehigh Engineering assumed command of the enterprise on March 2, 1961, or exercised control over the

laboring force or supervising as to the direction of the effort . . . ."

It is conceivable that, since Lehigh had already paid out all it owed National on its uncompleted contract and since National was not being able to meet payroll, Lehigh might have taken over the job to complete it and to hold National for Lehigh's loss.

On the other hand, Lehigh's contention is just as logical, namely, that, since National had not used for that purpose all advancements for payroll, Lehigh would pay direct to the workmen in order to keep them on the job. That Lehigh might have held National responsible for the additional expense to fulfill the contract is not inconsistent with Lehigh's contention that, although it paid the wages and accounted for withholding and Social Security taxes, the men remained in the employ of National.

National relies heavily upon testimony that on March 2, 1961, decedent, who was National's foreman on the Grace Mines job, called National's employes together and stated:

". . . as of eight o'clock this morning you will be working for Lehigh Engineering. Any of you fellows who don't want to work for them, take your tools and go now . . . ."

One witness, who left the job after the Frey accident testified that Fedorak, Lehigh's foreman, used the same language. Fedorak denies having been present when Frey is alleged to have made the statement, and another employe was unsure and did not hear what Fedorak said.

There is other testimony that the general or road supervisor for National was relieved of his responsibilities on March 1st, but that he replaced Frey on March 7th. This was done by negotiation with National's president, but he went on Lehigh's payroll. The job was completed under his directions, and the super-

visor testified that Fedorak told them what to do but not how to do it.

In our opinion, the controlling testimony is that of the persons who could actually negotiate for the two companies. They are Charles Decker, Sr., President of National and James O. Funari, Controller for Lehigh. While Decker states that the job was taken over by Lehigh on March 1, 1961, he refused to say that he washed his hands of it and his written correspondence contradicts any claim that National withdrew from the job.

In a letter dated March 2, 1961, Decker states:

". . . you will continue our payroll on the subject job effective 3/2/61."

This evoked a response in a letter by Lehigh, erroneously dated March 1, 1961, which stated:

". . . we will continue the payroll direct to insulating mechanics at subject project until completion of the project."

On April 19, 1961, after the job had been completed, Decker wrote to Lehigh:

"Being unable to finance our payroll past March 1, 1961, Lehigh Engineering Company took over all payroll for National Bond Insulators, Inc., March 2, 1961, in order to complete this job."

Another element is National's continuing to supply materials out of stock, though new materials to be purchased were purchased on Lehigh's credit.

We are convinced, therefore, that the referee and the board had ample testimony upon which to base their findings that Frey remained in the employ and under the supervision of National, although for fiscal purposes, he was placed upon the payroll of Lehigh. The situation is akin to that in Lee v. McMinn Industries, Inc., 167 Pa. Superior Ct. 501, in which decedent was in the employ of a subcontractor but was paid initially by the contractor, who backcharged the subcontractor

for the amounts forwarded to its employes. In the Lee v. McMinn case, the court stated, page 505:

"Payment of Lee's wages by Hinaman's [the contractor] checks is immaterial, for McMinn ultimately reimbursed Hinaman."

It is true in our case that Lehigh's chances of reimbursement seem very slim, but the correspondence clearly indicates that it was in the contemplation of both parties.

The placing of the road supervisor Bridges on Lehigh's payroll does not affect the decision one way or another. Lehigh's request for a foreman to replace Frey is an indication that control of the work was to be under a skilled National employe. His payment would naturally follow the pattern of the other employes.

Another question has been raised by National; the refusal to permit Frey's widow to testify that Frey had told her on March 1, 1961, that he would begin to work for Lehigh the next day.

Of course, the fact that this was hearsay evidence would not necessarily bar it from consideration by the Workmen's Compensation Board. See section 422 of The Workmen's Compensation Law of June 2, 1915, P. L. 736, as variously amended, 77 PS §834.

Whether or not, as contended by Lehigh, the referee and board have an absolute discretion to accept or reject hearsay evidence, we believe that the referee was fully justified in refusing to accept it in this case.

While hearsay does not require the immediacy or spontaneity of res gestae, it ought to recite observable *facts*. In this case, what Frey was supposed to have told his wife was not some statement made by a Lehigh representative which could have bound Lehigh, but was his own conclusion concerning his status, undoubtedly from conversation with his own superiors.

The relaxing of the rules of evidence is permitted in workmen's compensation cases in the futile hope that unlearned claimants might proceed without learned counsel. It was not intended to be employed in a contest between two insurance companies, each with able counsel.

Furthermore, there is no prejudice, because Frey's statements were admitted into evidence through his fellow workers, whom he addressed on the morning of March 2, 1961. Here, of course, he was speaking ex cathedra as foreman of the group he was addressing. That he made these statements was not challenged and, therefore, any like statements to his wife would have added nothing to their weight.

Since the board is the finder of facts, our function is not to decide whether we would have found the same facts, had we been in their place, but to determine whether they founded their findings upon competent evidence: Goodman v. Universal Shop, Inc., supra; Carnachione v. Hotel William Penn, 184 Pa. Superior Ct. 26, 29. The evidence relied upon by the board is clearly competent evidence that the men remained under the control and supervision of National and, therefore, were its employes at the time of Frey's fatal accident.

Now, July 9, 1963, the appeal of National Bond Insulators, Inc., from the award of the Workmen's Compensation Board in above-captioned action is dismissed, and it is ordered, adjudged and decreed that National Bond Insulators, Inc., and its insurance carrier reimburse Lehigh Engineering Co., Inc., and its insurance carrier for the amount advanced on said award as per stipulation of the parties and that hereafter National Bond Insulators, Inc., and its insurance carrier continue to pay the full amount due upon said award, according to its terms, namely, $32.50 per week until

November 16, 1967, and the sum of $12.25 per week thereafter until December 27, 1977, on behalf of her son Robin Lee Frey, in addition to the medical, hospital and funeral bills in said award provided; costs of this appeal to be borne by appellant.