CHARLES R. ALESSI, as Parent and Natural Guardian of Beverly Alessi, an Infant, Plaintiff, *v.* MUTUAL OF OMAHA, INC., Defendant.

City Court of Buffalo, November 30, 1966.

*Saperston, Wiltse, Duke, Day & Wilson (John Kirschner* of counsel), for defendant. *Goldman, Costa & Getman (Peter Costa* of counsel), for plaintiff.

JOSEPH J. SEDITA, J. This is a motion initiated by defendant praying for a dismissal of plaintiff's complaint and for summary judgment in favor of defendant.

Plaintiff seeks a money judgment from defendant pursuant to an insurance contract. The policy is of a type covering students on their way from home to school and school to home.

That the infant herein was injured is not denied but defendant contends coverage is not applicable in this case. Plaintiff disputes this.

The provision of the insurance policy giving rise to the dispute is that which reads as follows: "Traveling directly to or from the individual's home premises and the school for regular school sessions, within one hour before school begins and one hour after the individual is dismissed or the required time when traveling in school-furnished transportation."

In its moving papers, defendant has a significant diagram. It is reproduced herein to more adequately illustrate the facts.

```
                                        Voorhees Street
                                     _____
                                          :
                                          :
                                          :
                                          :
Amherst Street        (School)_____      (Place of
_____                            Injury)

                        :
                        :
                        :
                        :
                        :
                  (House of)
                  (Injured)
                        :
                        :
Woodward Avenue         :
_____
```

It is obvious from the above that the injured infant was not *directly* on her way home. (The time of the accident presents no problem.)

From the answers elicited from the infant at an examination before trial, significantly she stated she was not on her way home but may have been going to the library or for a "coke" or some place.

For this court's consideration, then, the question is to determine the interpretation intended by the contract by the negotiating parties.

Each party submitted a court decision for the court's perusal. One was entitled *Graser* v. *Mutual of Omaha* (70 Ill. App. 2d 24 [1966]). A boy was injured while attempting to climb a tree. The tree or scene of the accident was not on the "direct" route home. In this case the court accepted a strict interpretation of the word "directly".

In *Dzurko* v. *Pilot Life Ins. Co.* (195 Pa. Super. Ct. 267) the insured infant lived 1,500 feet northwest of the school. He accompanied a friend intending to go to a downtown store

which was located 1,500 feet east of the school. The boy was injured in an accident at a point approximately 700 feet east of the school. In this case the court found in favor of the insured.

The two cited cases reach results which are diametrically opposed.

Two well-settled principles of law are that insurance policies are construed strongly against the insurer and that if a provision lends itself to two possible interpretations, the one most favorable to the individual should prevail (see *Blue Anchor Overall Co.* v. *Pennsylvania Lbr. Mut. Ins. Co.* 385 Pa. 394).

This court favors the reasoning of the *Dzurko-Pilot* case (*supra*).

The type of policy under advisement is relatively new. The primary purpose is to provide coverage to parents for injuries sustained by their children while going to and from school. I believe that it is justifiably assumable that when the insurance companies inaugurated this type of coverage, they had made a comprehensive study of the number of accidents occurring and involving school children between the time — one hour before and one hour after school hours. After compiling the information they were able to offer a policy at a cost which would be reasonable to the purchaser and at the same time would contemplate the probable cost to the insurer and would provide for some profit therefrom. Undoubtedly the study confined itself to the number of accidents occurring, and not simply to those which occurred within one hour to children on a direct route home. If the observation is correct, albeit no information is available to the writer, and in the first instance the insurance company was in fact concerned with accidents within the hour, more so than the location of an accident, then it would have to assume a more liberal construction of the word " directly."

In devising a policy it should be fair to assume that the authors were reasonable men and recognized the nature of children. That they will dawdle, engage in horseplay, surrender to curiosity, walk a friend home, enter the friend's home to see a new toy, pick up a book at a neighborhood library or stop at a neighborhood store for candy or a soda, are all acts which one may normally expect of children. And to assume that these normal acts would cease with the inception of an insurance policy is to be unrealistic.

If an insurance policy sincerely seeks to provide coverage against accidents for children, then a practical and realistic interpretation of the provisions of the policy is necessary, otherwise the true intent of the policy is defeated.

It seems to this writer that a hard and fast rule is arbitrary and that whether or not the injured is covered by the terms of the policy should be a factual determination.

This court deems it advisable to utilize two terms as guidelines in determining whether or not coverage is applicable. Those terms are "primary paramount intent" and "abandonment."

If the "primary paramount intent" of the child is to go home, coverage should not be denied because of a detour on a friend's route home, or a detour-stop at a friend's home, or a detour-stop at a neighborhood library, or a detour-stop at a candy store.

On the other hand, if the primary paramount intent is "abandoned," the coverage should not apply. Examples of this would be to go downtown to buy a suit or to pay a social call which is more than casual. Remaining for dinner at another's home would suggest most emphatically that the primary paramount intent to go home has been abandoned.

On the basis of the foregoing, defendant's motion to dismiss plaintiff's complaint and for a summary judgment is denied and the above-entitled action is hereby ordered to trial.