Dandy, Appellant, *v.* Century House and Window Cleaning Company.

Argued March 25, 1955. Before RHODES, P. J., HIRT, ROSS, GUNTHER, WRIGHT, WOODSIDE, and ERVIN, JJ.

*Joseph H. Resnick,* for appellant.

*C. A. Whitehouse*, Associate Counsel, with him *Ralph H. Behney*, Deputy Attorney General, *Herbert B. Cohen*, Attorney General and *Sol R. Gitman*, Special Deputy Attorney General, for appellee.

OPINION BY GUNTHER, J., July 21, 1955:

Claimant's decedent died from a heart attack while in the course of his employment. Benefits were denied by the referee, the board, and the court below and claimant has appealed.

Decedent, age 50, was employed as a window cleaner. While performing his duties on the tenth floor of an office building in Philadelphia and strapped to the window, he collapsed, was taken into the building and found to be dead. The diagnosis of the cause of death was coronary arteriosclerosis with acute coronary insufficiency. It is admitted that he had a previous condition of arteriosclerosis. There was testimony that decedent had a bruise on his head and that there was blood on the window sill. These statements, however, were refuted by defendant's witnesses, in whose favor the hearing authorities found as to credibility. Claimant also presented a witness at a rehearing, several years after the death, who testified that he saw something fall off the roof and strike a window cleaner on the head. This witness could not identify decedent as the man he saw and was uncertain and evasive in several particulars. Needless to say the hearing authorities placed no credibility in this witness's story or its connection with this claim. It is the prerogative of the compensation authorities to give the testimony such consideration as it may deserve, and to accept or reject it in whole or in part accordingly. *Halloway v. Carnegie-Illinois Corp.*, 173 Pa. Superior Ct. 137, 96 A. 2d 171.

Claimant's theory of an accident is that decedent suffered a trauma from some kind of blow on his head which aggravated his previous heart condition, thus causing the attack, which was in turn aggravated by fright or alarm at his apparently helpless situation high in the air with no one to help him. Stripped of proof of a traumatic shock by the findings of fact, as indicated above, the theory boils down to assuming that decedent suffered a heart attack which left him in a conscious state, but which then became severely aggravated because of his fear or alarm at his situation, thus accelerating his death. This interesting theory was advanced by claimant's medical witness, based partly on the estimate that about thirteen minutes elapsed from the time decedent was first seen in a slumped position until he was brought into the room. This theory was not agreed to by the two other medical witnesses. Also there was no evidence that decedent remained conscious or even alive after he first slumped against the window. Had he been rendered unconscious or dead immediately, no opportunity for a fear reaction would have existed. Claimant's theory is entirely guesswork based on unproven assumptions. We fail to see wherein any accident has been proven.

Where the decision of the board is against the party having the burden of proof, the question for review is whether the findings of fact are consistent with each other and with the conclusions of law and can be sustained without a capricious disregard of the competent evidence. *Silvers v. Philco Corp.,* 175 Pa. Superior Ct. 246, 103 A. 2d 286. It is clear that the compensation authorities based their findings and conclusions on competent evidence and made consistent results therefrom.

Order affirmed.