## Buff, Appellant, *v.* Fetterolf.

Argued September 13, 1965. Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, and HOFFMAN, JJ. (FLOOD, J., absent).

*Don F. D'Agui,* with him *Albert Ring,* and *D'Agui & Del Collo,* for appellant.

*Richard D. Harburg,* with him *Swartz, Campbell & Detweiler,* for insurance company, appellee.

OPINION BY WATKINS, J., December 16, 1965:

In this workmen's compensation appeal the Court of Common Pleas No. 3 of Philadelphia County affirmed the decision of the Workmen's Compensation Board that at the time of the accident to the claimant-appellant, Harry W. Buff, there was no contract of workmen's compensation insurance existing between Daniel Fetterolf, the defendant-employer and Employers Mutual Liability Insurance Company of Wisconsin, the defendant-appellee. The referee had decided that there was insurance coverage.

The record discloses that the employer and the company negotiated a contract of workmen's compensation insurance and, after payment of the initial premium, the employer was covered for a period effective March 27, 1961, to March 27, 1962. The policy number was 221300028109. In March 1962 the employer was billed for a renewal premium of $144.75 to extend the coverage from March 27, 1962, to March 27, 1963. The employer delayed payment awaiting the payroll audit which determines his refund from the prior policy. On May 23, 1962, the insurance company sent notice to the employer and the Pennsylvania Compensation Rating and Inspection Bureau that the policy was cancelled as of June 8, 1962. This cancellation was on a printed form 315-2202 Form R10. The reason for cancellation was nonpayment of premium.

The accident occurred on June 14, 1962. On the same day notice of the accident was given to the insurance company by a telephone call from the rating bureau. Notice of this telephone call and the data concerning the accident was immediately reduced to memorandum form, by an employee of the company and made a part of the employer's file. This memorandum is a part of this record. No notice of the accident was given to the company by the employer. On the day of the accident the employer sent a check to the company in the amount of $144.75 as billed him by the insurance company to renew policy number 221300028109 for the period 3/27/62 to 3/27/63. The company received the check on June 15, 1962, at which time it had notice of the accident. The company, through its employees, in the regular course of its business, cashed the check by depositing it and endorsing it as follows: "Per Account of Daniel Fetterolf, 8 First Street, Lansdowne, Pa. Premium $144.75 paid in full. Acct. No. 221300028109." This account number was the policy number. The policy in question is marked with an X under "renewal" and the dates of coverage are from 3/27/62 to 3/27/63.

The insurance company sent a second notice of cancellation to the rating bureau indicating the effective date of cancellation to be July 3, 1962. This notice was of no legal effect as the policy had already been effectively cancelled as of June 8, 1962.

The insurance company after receipt and deposit of the premium, and notice of the accident, sent a reinstatement notice to the rating bureau, as required, indicating that the policy of the employer was reinstated as of June 8, 1962. No such notice was sent to the employer. On June 28, 1962, the insurance company sent a letter to the rating bureau stating that the reinstatement notice of June 26, 1962, was sent in error and should be ignored. This letter was sent at the request of the rating bureau after a telephone conversa-

tion between the bureau and the company on June 28, 1962.

It is apparent that the company recognized the fact that the policy had been renewed in the ordinary course of business and the second attempt at cancellation and the telephone conversation and letter to the bureau that followed was a hurried attempt to try to cure the damage.

The referee and the board came to diametrically opposed conclusions of law based on the application of the factual evidence above set forth. The facts necessary to decision are admitted; the matter to be determined, therefore, is whether the board and the court below, in its review, properly concluded from these facts that a contract of insurance was not in existence. Was the law properly applied to the facts? *Dandy v. Century House & Window Cl. Co.,* 179 Pa. Superior Ct. 365, 115 A. 2d 871 (1955). The board decided this case on the following reasoning. "After the cancellation of the original policy, the company could not be bound to cover the employer for the accident of June 14, 1962 unless a new contract was made by the parties with a meeting of minds on all of its terms. This could not be done, of course, unless the company had knowledge of the accident at the time the contract was made.

"Although required to do so by the terms of the policy, the employer never did give notice of the accident to the company himself. On June 14, 1962, the Claims Department of the company had received a telephone call from the Workmen's Compensation Board inquiring whether or not the employer was covered with insurance for the accident, but the company is not chargeable with knowledge of the accident because of this fact."

If there had been no intervening accident the policy would have been continued in force without complaint from the company but an accident did happen on the

very day that the offer was made to the company by the employer. As of the date of the accident no contract existed between the company and the employer because the policy had been effectively cancelled as of June 8, 1962. However, it is possible for a contract that has been cancelled to be renewed, reinstated, and have new life breathed into it by a proper offer, acceptance and consideration. Reinstatement notice forms RN1258 are printed for such a purpose and for the purpose of notifying the bureau so that they have a record as to whether or not employers' workmen are covered with workmen's compensation insurance. Such a form was used in the notice of reinstatement as of 6/8/62.

The offer was in the form of a check for the full amount of the premium as billed. The acceptance was the cashing of the check, marking it "paid in full" for the policy No. 221300028109, and the notice, in writing, to the bureau was confirmation that the policy was reinstated. The consideration was the sum of $144.75. Restatement, Contracts, §§29, 56, 63. It is sufficient for such a workmen's compensation insurance policy that the parties have reached an agreement as to the insurance, that their minds have met. *Levan v. Pottstown, P. Ry. Co.*, 279 Pa. 381, 124 A. 89 (1924). The question whether an undisputed set of facts establishes a contract is one of law. *Home Protection B. & L. Assn. Case*, 143 Pa. Superior Ct. 96, 17 A. 2d 755 (1941); 8 P.L.E. Contracts, §28. There is no question that under the admitted facts the company, through its employees, in the ordinary and customary way of doing business, reinstated this policy. Employees testified that when notice of reinstatement was mailed to the bureau, the reinstatement had already taken place.

The law in Pennsylvania is well settled that an insurance company is bound by the acts of its agents and employees in the ordinary course of business and one dealing with such company is under no duty to ascer-

tain the extent of the authority of such employees. *Harris v. Meyers,* 160 Pa. Superior Ct. 607, 52 A. 2d 375 (1947) ; Restatement 2d, Agency, §§8, 79, 80.

The testimony of Edna F. Kunkel, the company's rating supervisor, when examined by the company's attorney testified as follows: "Q. What was done? A. Again the rater had orders to reinstate and that inner-office communication was circulated to every department. Q. What was the purpose of that? A. To check with all five departments to make sure of the reinstatement of this policy. Q. Does the claims department get a copy of this form? A. Well, they get the actual file . . . . Q. Then does it come back to you? A. What would come back is a tickler copy, indicating that it went to the file again, and at that time, if every department has approved the reinstatement I will send a letter of reinstatement to the insured and notice to the bureau at that time." It should be noted that the company when asked to produce the reinstatement voucher that had been circulated and concerning which the company's agent Mrs. Kunkel testified should have been included in the file, was unable to produce it. It was the only paper that was not produced. "Where evidence which would properly be part of a case is within the control of the party whose interest it would naturally be to produce it, and, without satisfactory explanation he fails to do so, the jury may draw an inference that it would be unfavorable to him." *Williams v. Phila. Trans. Co.,* 415 Pa. 370, 378, 203 A. 2d 665 (1964).

Under the admitted facts it must be concluded as a matter of law that the policy was reinstated in accordance with the company's normal procedures and the reinstatement was confirmed by the notice to the Rating Bureau as required by law. A careful examination of the board's opinion indicates that the only reason for its conclusion was that, even assuming all the

elements were present to establish a contract of renewal, that the policy was ineffectively reinstated because of the failure of the insurance company to have legal notice of the accident.

Two members of the insurance company's claim department testified to knowledge of the accident by the company on the day it happened. The company was notified by the bureau of the name of the claimant, the accident, how he was hurt and the complete data concerning it. The board admits that notice was given to the company by the rating bureau but holds: ". . . but the company is not chargeable with knowledge of the accident because of this fact. This inquiry, which was made by a third party for the purpose of eliciting information from the company, cannot be construed as having the opposite effect of giving legal notice of the accident to the company." This is error. The rating bureau is the only bulwark between an employee and his employer as to whether or not he is protected by workmen's compensation insurance. We think that it is unfortunate that the law does not only require notice to the rating bureau of a change in workmen's compensation coverage but that such notice should be required to be given to the covered employees. A man may go to work for a company that has workmen's compensation coverage and have it cancelled without his knowledge and suffer an accident for which he cannot recover because of the financial irresponsibility of the employer. The penalties meted out under the law to the employer for failure to secure coverage does not pay the employee for a broken back or an occupational disease.

The Workmen's Compensation Act provides that the employer who accepts the Act must insure his employees or be exempted by proving financial responsibility. An employer who fails to do either is subject to serious penalties in the form of fines and imprison-

ment. Section 305 of the Workmen's Compensation Law, 77 PS §501. Complete copies of all contracts of insurance, renewals, cancellations and reinstatements and all endorsements must be given by the company to the rating bureau. Act of July 2, 1953, P. L. 342, §4, 40 PS §814.

". . . as between the insurer and any claimant under such acts, (Workmen's Compensation acts), notice to the employer or the employer's knowledge of an accident . . . constituting the basis of a claim under such acts shall be notice to and knowledge of the insurer." Act of July 2, 1953, P. L. 342, §1, 40 PS §811.

Where a policy of automobile insurance requires that the assured give written notice of any accident, such notice may be given by one who has sustained damages as a result of the negligent operation of the automobile by the assured. "If the insurer is not harmed, it will not be allowed to complain that notice was not given to it in the precise manner specified in the policy." *Morris v. Bender,* 317 Pa. 533, 538, 177 A. 776 (1935).

In workmen's compensation insurance this theory should be even more liberally applied since under the Workmen's Compensation Insurance Law, "Such agreements shall be construed to be a direct promise to the injured employe . . . Such obligation shall not be affected by any default of the insured, after an accident . . . in the payment of premiums or in the giving of any notices required by such policy or otherwise." 40 PS §811, supra. It certainly follows that if a contract existed a great injustice would be done if the company were permitted to escape liability by ignoring actual notice or knowledge of the accident because such notice or knowledge did not come from the assured.

If, as we have determined here, a reinstatement took effect even though no notice was given to the company by the employer, so long as the accident was brought

to its notice in any way the insurer is liable. It seems even stronger when in this case the source of the notice and knowledge of the accident was given to the company by the official rating bureau of the Workmen's Compensation Board.

It may well be that the employer took advantage of the situation confronting him in this case but the innocent third party, the employee, for whose benefit the contract was required under the law, was not responsible for what took place. The law was enacted and the insurance provided by the legislature for the protection of employees. It may well be that the reinstatement of the policy was by negligence or inadvertence on the part of the company but again its lapse in good business practice which resulted in the reinstatement of the policy should not be visited on the innocent employee.

The order of the court below is reversed and the record is remanded to the Workmen's Compensation Board for an award in accordance with this opinion.