Workmen's Compensation Appeal Board of the Commonwealth of Pennsylvania and Anne Shremshock *v.* Borough of Plum and Bituminous Casualty Corporation, Appellants.

Argued May 9, 1975, before Judges CRUMLISH, JR., WILKINSON, JR., and BLATT, sitting as a panel of three.

*George H. Thompson,* with him *Hirsch, Weise & Tillman,* for appellants.

*Frank W. Jones,* with him *Sanuel Y. Stroh* and *James N. Diefenderfer,* for appellees.

OPINION BY JUDGE CRUMLISH, JR., June 25, 1975:

The Borough of Plum, and its insurance carrier, Bituminous Casualty Corporation (Appellants here), appeal from an order of the Workmen's Compensation Appeal Board (Board) which affirmed the referee's decision awarding compensation to Anne Shremshock (Claimant), wife of the deceased, Michael Shremshock (Decedent), who had filed a fatal claim petition. We affirm.

The thrust of Appellant's petition here, as it was before the Board, is that at the time of Decedent's death he was not for the purposes of compensation, acting in the course of his employment. This presents for us two issues for our determination.

1. Is a Borough roadway the premises of an employer as that term is defined in the Pennsylvania Workmen's

Compensation Act, Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §1, et seq. (Act) ?

2. Is an employee's death an injury arising in the course of his employment and related thereto when he is fatally shot by a fleeing bankrobber on a roadway where Decedent stopped to eat lunch or to relieve himself?

And finally, Appellant raises the death or injury caused by third person issue, to wit:

3. Was the death of Decedent at the hands of a fleeing felon an injury caused by the act of a third person whose intent it was to kill Decedent for reasons personal to the robber, or was it directed to Decedent in his capacity as a Borough employee?

Giving rise to this litigation are the following extraordinary circumstances: Decedent was employed by Appellant Borough as a truck driver. The day he died, he was hauling asphalt on a regular course between a paving plant in New Kensington and a job site in Holiday Park. However, when authorities found his body lying beside his truck, it was off course on a small infrequently travelled thoroughfare named Columbia Road. The record established time of death to be within the frame of one's normal lunch period. Decedent's lunchbox was on the truck seat, unopened. Claimant testified that her husband, the decedent, suffered a physical condition which compelled him to relieve himself quite often, which would tend to explain why Decedent's trousers were unfastened when his body was found near the truck. The only bank robber apprehended testified that Decedent, in fact, had been shot during their flight.

Based on this testimony, the referee found, and the Board adopted, the following relevant finding of fact:

"FIFTH. That decedent, while in the course and scope of his employment as a truck driver for said defendant, Borough of Plum, had stopped his truck along a Borough roadway, and while decedent was either about to relieve himself or eat lunch, decedent

was shot and was killed by a gunshot wound of the head by an escaping felon."

The section with which we are here concerned is Section 301(c)(1) of the 1972 Amendments to the Act, 77 P.S. §411(1) which states *inter alia:*

"(1). The terms 'injury' and 'personal injury,' as used in this act, shall be construed to mean an injury to an employe, regardless of his previous physical condition, arising in the course of his employment and related thereto, and such disease or infection as naturally results from the injury or is aggravated, reactivated or accelerated by the injury; and wherever death is mentioned as a cause for compensation under this act, it shall mean only death resulting from such injury and its resultant effects, and occurring within three hundred weeks after the injury. The term 'injury arising in the course of his employment,' as used in this article, shall not include an injury caused by an act of a third person intended to injure the employe because of reasons personal to him, and not directed against him as an employe or because of his employment; but shall include all other injuries sustained while the employe is actually engaged in the furtherance of the business or affairs of the employer, whether upon the employer's premises or elsewhere, and shall include all injuries caused by the condition of the premises or by the operation of the employer's business or affairs thereon, sustained by the employe, who, though not so engaged, is injured upon the premises occupied by or under the control of the employer, or upon which the employer's business or affairs are being carried on, the employe's presence thereon being required by the nature of his employment."

Prior to the enactment of the 1972 Amendments, Section 301(c) stated in relevant part, *"injury by accident in the course of his employment."* That section now reads *"injury arising in the course of his employment."* We be-

lieve, and so hold, that this change was made to provide consistency with that portion of the accident requirement which was deleted elsewhere in the Act. But, the latter addition of the phrase "and related thereto" which follows "arising in the course of his employment" to us means that the injury, whether it occurred on or off the premises, must to some degree be causally connected to the course of employment. "Arising in the course of his employment," by definition in the Section, includes all injuries sustained while the employee is actually engaged in the furtherance of the business or affairs of the employer, whether or not he is actually on the employer's premises. Since this definition is identical to the previous language, prior interpretive rulings apply. Accordingly, the sole relevant difference between the 1972 Amendments and the prior statute as applied to Section 301 (c) "course of employment", for purposes of this case is the degree of causation imposed by the phrase "and related thereto."

Assuming decedent was not on the employer's premises at the time of the shooting, claimant may still recover, *see Del Rossi v. Pennsylvania Turnpike Commission,* 210 Pa. Superior Ct. 485, 233 A.2d 597 (1967), if it can be established that Decedent was at the time actually engaged in the employer's business. *See Palko v. Taylor-McCoy Coal & Coke Co.,* 289 Pa. 401, 137 A. 625 (1927). This is contrasted with the on premises rule under which the claimant need not show that he was actually engaging in the employer's business, provided no abandonment has occurred. *Weiss v. Friedman's Hotel,* 176 Pa. Superior Ct. 98, 106 A. 2d 867 (1954).

It now becomes the duty of inquiring authority to determine whether Decedent was engaged in his employer's business when he drove the truck onto the side road (Columbia Road) for the purpose of eating lunch or relieving himself. In *Hess v. Catholic Knights of St. George,* 149 Pa. Superior Ct. 575, 27 A. 2d 542 (1942), the concept was recognized that course of employment

[for our purposes on or off premises] embraces intervals for leisure within regular hours of the working day, and further, momentary and/or temporary departures from work routine and "administering to employees' personal comforts" does not break the continuity of "course of employment." *Baumann v. Ehmke Co.*, 126 Pa. Superior Ct. 108, 190 A. 343 (1937). Inconsequential or innocent departures from the course of employment will not bar compensation. *Mitchell v. Holland Furnace Co.*, 189 Pa. Superior Ct. 82, 149 A. 2d 662 (1959).

These precedents clearly indicate that notwithstanding Decedent being off the business premises, his conduct in hauling asphalt over the workday is engaging in the employer's business, and minor deviations for personal comfort (relieving himself) or leisure (lunch) does not break the chain of conduct in the "course of employment."

The question which now arises is how the phrase "and related thereto" affects the rationale of the prior case law. If an employee is engaged in his employer's business, as he must be to recover if off the premises, and as we have concluded Appellant was, he is, of necessity, in the course of his employment. In such a situation the causal connection imposed by the phrase "and related thereto" in reality, means that but for the employment, the employee would not have been on the job and therefore no injury would have arisen. Clearly, but for hauling asphalt the decedent would not have been in a position to be shot. In *Workmen's Compensation Appeal Board v. Jeddo-Highland Coal Co.*, 19 Pa. Commonwealth Ct. 90, 338 A. 2d 744 (1975), we interpreted the phrase "and related thereto" to mean that the injury which occurred must have been directly related to the employee's work. We have little difficulty in holding that the injury to decedent was clearly due to the necessity imposed by his job, placing him at that time on Columbia Road.

Finally, Appellant urges that Section 301(c) precludes an award of compensation by its terms arguing that injuries arising in the course of employment do not extend to injuries caused by the act of a third person who intended the injury because of reasons personal to him, and was not directed against him in his capacity of employee or because of the fact of his employment.

The instant factual situation is controlled by the Supreme Court in *O'Rourke v. O'Rourke*, 278 Pa. 52, 122 A. 172 (1923). There decedent and his foreman at the end of their normal working day had gone from their place of employment and were proceeding to collect an indebtedness owed to their employer when they were set upon by two inebriates. The injury in dispute arose from the attack. There, as here, the Court concluded that Decedent was in the course of his employment with the question becoming whether acts by third parties causing the injury were compensable. Justice FRAZER interpreted the third party provision of Section 301:

"The attack was wholly unpremeditated, due, no doubt, to the intoxicated condition of two of the parties involved. The result of the trouble was an unexpected happening in the course of employment and compensable under section 301 above referred to, which, after stating the exceptions, provides the term injury by accident in the course of employment 'shall include all other injuries sustained while the employee is actually engaged in the furtherance of the interest of the employer whether upon the employer's premises or elsewhere.' An illustration of the application of this rule is found in Hale v. Savage Fire Brick Co., 75 Pa. Superior Ct. 454, where compensation was allowed for injuries received by falling while the employee was engaged, during the lunch hour, in playing sport with fellow employees from whom he was attempting to escape. On the other

hand, in Cawley v. Express Co., 276 Pa. 160, compensation was refused for injuries resulting from an assault committed by one employee upon another during a quarrel over personal matters not relating to the employment, claimant having sustained his injuries by stumbling from a platform on the employer's premises, while endeavoring to avoid his assailant. The basis of the decision is found in the following extract from the opinion (page 163) : 'The conflict was solely an individual matter arising from the animosity of the two involved, and in this differs from the case of Hale v. Savage Fire Brick Co., supra, relied on below, which really turned on whether the claimant at the time was in the course of his employment. Clearly, the boy there hurt was not engaged in an encounter arising from personal enmity.' *Had there been in the present case previous differences between deceased and the persons who assaulted him, and the attack made for that reason, the rule in Cawley v. Express Company would apply. No personal animosity existed, however, and the attack, so far as the evidence shows, was without provocation or premeditation and merely the result of an evil mind excited by an excessive use of liquor. In our opinion, an attack from such source was an unexpected happening in the course of decedent's employment and properly the subject of compensation.*" *O'Rourke, supra,* 278 Pa. at 55-56, 122 A. at 173. (Emphasis added.)

The testimony leaves little doubt that no pre-existing animosity existed between the slayer and Decedent. This being so, *O'Rourke* controls.[1]

Consistent with the foregoing, we

---

1. For a further explanation of the third party rule, see, *Cleland Simpson Co. v. Workmen's Compensation Appeal Board,* 16 Pa. Commonwealth Ct. 566, 332 A. 2d 862 (1975).

## ORDER

AND NOW, June 25, 1975, it is hereby ordered that compensation be paid to Claimant, Anne Shremshock by the Borough of Plum and/or its Insurance Carrier, Bituminous Casualty Corporation, at the rate of $61.20 per week commencing August 25, 1972, and continuing to the present and into the future. Interest is to be paid by the Appellant on all deferred payments of compensation at the rate of 6% per annum, in accordance with the provisions of the Act.

Attorney's fees in the amount of 20% of weekly compensation to date are awarded to counsel for Claimant.

Appellant and/or its insurance carrier are directed to reimburse the Claimant for the statutory funeral expense in the amount of $750.00.