Mary L. Bowes, Petitioner *v.* Inter-Community Action, Inc., Mental Health & Retardation Center, Respondents.

Argued February 4, 1980, before Judges ROGERS, BLATT and WILLIAMS, JR., sitting as a panel of three.

*Thomas F. McDevitt,* for petitioner.

*Peter J. Weber,* with him *Lowell A. Reed, Jr., Patricia A. Mattern* and *Rawle & Henderson,* for respondents.

OPINION BY JUDGE ROGERS, March 7, 1980:

Mary L. Bowes has appealed from a decision of the Workmen's Compensation Appeal Board affirming a referee's decision denying her benefits on the ground that she had not proven a compensable injury within the meaning of Section 301(c) of The Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §411. We affirm.

Mrs. Bowes was last employed as a mental health worker by Inter-Community Action, Inc., Mental Health and Retardation Center (Interact), an outpatient mental health clinic. Mrs. Bowes' principal duty was to conduct first interviews with patients and to refer them to the appropriate members of the clinical staff. On August 30, 1973 she interviewed Mrs. Lawrence Milillo, a woman who had recently been discharged from a mental hospital and who came to Interact on that day because she was in distress and had been unable to consult her treating psychiatrist. Mrs. Milillo's husband was with her on this visit. Their purpose was to obtain immediate psychiatric treatment for Mrs. Milillo. There were no psychiatrists at Interact on August 30, 1973—the Thursday before the

Labor Day weekend—and none were available by telephone. Mrs. Bowes suggested that Mrs. Milillo call the physician covering for her regular psychiatrist or that she attempt to see a psychiatrist at a nearby hospital. Mrs. Milillo was unhappy with the suggestions but she and her husband accepted the telephone number of the covering physician which Mrs. Bowes obtained for them. About a week later, Mr. Milillo telephoned Mrs. Bowes to tell her that his wife had committed suicide less than three days after the August 30, 1973 interview. He did not blame her for his wife's death at that time but the news of the suicide upset Mrs. Bowes. Shortly thereafter, while attending a staff meeting, Mrs. Bowes saw Mrs. Milillo's funeral procession at a funeral home across the street from the Interact office and became too upset to remain at the meeting. She continued to work. On October 13, 1973, while at home, she read in a local newspaper a letter to the editor from Mr. Milillo sharply critical of her attitude at the interview of August 30, 1973, which he described as curt and hostile and of her failure to arrange for Mrs. Milillo's admission to a hospital. Mrs. Bowes interpreted the letter as blaming her for Mrs. Milillo's death. She was distraught and unable to eat or sleep for several days. She missed one day of work because of her condition. When she returned to work she experienced intermittent pains in her shoulders, back, arms and face. Mrs. Bowes was examined by her personal physician on October 22, 1973 and was admitted to a hospital with a diagnosis of myocardial infarction. She has not worked since that time.

Mrs. Bowes filed a claim petition for workmen's compensation benefits, alleging that her heart attack was caused by "overexertion, stress and strain" in her work as a mental health worker for Interact. A referee, after hearings at which the claimant and her medical expert witness testified, found that Mrs.

Bowes had suffered a "cataclysmic emotional collapse" after reading Mr. Milillo's letter in the local newspaper and that this collapse caused her heart attack. He concluded, however, that the heart attack did not arise in the course of her employment as required by Section 301(c) of the Act because the event which caused the heart attack, the reading of the letter, occurred while she was at home and not while she was actually engaged in furthering the business affairs of her employer. The referee therefore denied benefits. Mrs. Bowes appealed the referee's decision to the Appeal Board which affirmed the referee. This appeal followed.

Section 301(c) was amended by the Act of March 29, 1972, P.L. 159, §7. The provisions of Section 301 (c) pertinent to these proceedings were changed as follows, with the added language in emphasis and the deleted language in brackets:

The terms 'injury' and 'personal injury,' as used in this act, shall be construed to mean [only violence to the physical structure of the body,] *an injury to an employe, regardless of his previous physical condition, arising in the course of his employment and related thereto.* . . . The term 'injury [by an accident] *arising* in the course of his employment,' as used in this article, . . . shall include all other injuries sustained while the employe is actually engaged in the furtherance of the business or affairs of the employer, whether upon the employer's premises or elsewhere. . . .

Mrs. Bowes first contends that the changes in Section 301(c) made by the 1972 amendments removed the requirement that the claimant injured off the employer's premises be actually engaged in the furtherance of the employer's business or affairs. The contention is contrary to decisions of this Court. *North Ameri-*

*can Rockwell Corp. v. Workmen's Compensation Appeal Board*, 21 Pa. Commonwealth Ct. 437, 346 A.2d 379 (1975). *See also Workmen's Compensation Appeal Board v. Borough of Plum*, 20 Pa. Commonwealth Ct. 35, 340 A.2d 637 (1975).

Mrs. Bowes next says that she proved that her heart attack arose in the course of her employment by the testimony of her medical expert witness that it resulted from stress caused by a series of events, beginning with her interview of Mrs. Milillo and culminating in her reading of Mr. Milillo's letter to the newspaper. She says that the referee capriciously disregarded this testimony in finding that the heart attack was caused by a single event—the reading of Mr. Milillo's letter in the newspaper. We disagree. It is true that the claimant's medical expert testified that emotional distress connected with "the course of events related to Mrs. Milillo could be considered to be a risk factor responsible for the development of the acute myocardial infarction" and that there was a causal connection between that course of events and the infarction. However, he testified more specifically as follows:

A. (Continuing) Therefore, I want to amplify on this term, 'upset.' From what she told me, and also from the nature of the situation to which she had an emotional reaction, it is obvious that the disturbance of affect—which is the professional term that we use instead of upset—the disturbance of affect which she manifested was one of tremendous anger because of her feeling that any implications regarding her handling of this particular situation were unjust; regardless of what was intended in the writing of the letter, her reaction to it was such that it evoked this type of disturbance of affect.

Q. Did the reading of the newspaper provoke any prodromal symptoms—can you tell us that or not?

A. She read that item in the newspaper on October 13, 1973; and from that time on, she was unable to function properly on an emotional level, in connection with her duties at this neuropsychiatric center called—what is it?

MR. WEBER: INTERACT.

A. (Continuing) And that four days later she began to manifest, that is four days after being informed of the contents of this letter in the newspaper—four days after that, she began to develop her prodromal symptoms of acute myocardial infarction.

THE REFEREE: Excuse me. Define for the Referee 'prodromal.' I never heard of the term.

. . . .

. . . In a great majority of the patients with a myocardial infarction, there is the stage, the prodromal stage—prodrom means the symptomatology that just proceeds [sic] the actual event.

. . . .

Q. What were they in this case, Doctor?

A. Her pains. Her pains were the clinical manifestation of the prodromal stage of her myocardial infarction.

. . . .

Q. Do you have an opinion as to whether they were or were not related to the incident of reading the newspaper?

A. I thought I made that clear in my testimony because I stated that on October 13 is when she was shown the letter, and four days later she developed some pain. To be more spe-

cific, I would say that the prodromal state of her myocardial infarction was connected causally to the emotional disturbance evoked by the information in that letter.

The doctor also referred to the "problem of internalized anger and its relationship to precipitation of coronary events of one sort or another." Since the first occasion for Mrs. Bowes' experiencing internalized anger over the Milillo affair was the reading of the letter in the newspaper for the first time accusing her of improper conduct, the Doctor's reference is clearly to the reading of the letter as the event which precipitated the myocardial infarction. A referee may, in the exercise of a broad discretion, accept or reject the testimony of any witness, including a medical witness, in whole or in part. *American Refrigerator Equipment Co. v. Workmen's Compensation Appeal Board*, 31 Pa. Commonwealth Ct. 590, 377 A.2d 1007 (1977). Hence, the finding of the compensation authorities that it was the reading of the letter to the editor of the newspaper which caused the heart attack could be, and was, made without capricious disregard of competent evidence. In view of this proper finding, our case of *Weingrad v. Byberry State Hospital*, 26 Pa. Commonwealth Ct. 410, 363 A.2d 833 (1976) is controlling. There, the claimant's deceased husband, a physician employed by Byberry State Hospital, was murdered in a downtown Philadelphia parking lot by a former mental patient of another Byberry physician, the latter of whom arranged the killing over a dispute with Weingrad about professional matters at Byberry. We held that the death was not compensable because the decedent was not engaged in furthering his employer's business affairs at the time of his murder. Similarly, Mrs. Bowes' act of reading Mr. Milillo's letter to the editor at her home was not done while she was engaged in furthering her employer's busi-

ness, although Mr. Milillo's act of writing the letter may be said to have been related to her work.

Order affirmed.

ORDER

AND Now, this 7th day of March, 1980, the order of the Workmen's Compensation Appeal Board is affirmed.

President Judge BOWMAN did not participate in the decision in this case.